PBarsokj C. J.
We concur with Mr. Eaton in the position, that from the manner in which the ease was put to the jury, the motion for a venire de novo is to be considered on the testimony of the witnesses for the prisoner only ; and that the testimony of his principal witness, Harriet, is to be taken in the view most favorable to him. This follows from the fact, that the Judge made a general charge, and did not “ declare and explain the law arising on the evidence.'’ State vs. Summey at this term, Gaither vs. Feribee; 1 Winston, 315, State vs. Norton, Id., 305.
We have these.facts : The prisoner and one Micajah, in. a star-light night and in the shade of trees, had a fight. Micajah got the prisoner down, and then r§m off. The prisoner rose up, and had his hand to his side, as if he was holding something in his hand ; lie then sat down on the door sill, on which the deceased was sitting. Words passed between them — the prisoner got up — the deceased then rose, up and' reached his hanri inside the door and got a stick. As lie was turning rouud (after getting the stick,) the prisoner stabbed him in the left side witli a bowie knife, the blade of which was nine inches long.. The deceased then knocked him down with the stick i as he rose, he knocked him down.a second and a third time ; prisoner ran off, the deceased followed him a few steps, and fell, and died of the wound. The bowie knife and stick were admitted to he deadly weapons.
The learned counsel insisted that the offence was manslaughter, on two grounds. The aet of seizing the stick, with an intent instantly, to strike, was an assault with a deaply weapon, and amounted to legal provocation. *65 2. The prisoner had reasonable ground to believe that the deceased was about to do hiili great bodily harm, and struck to prevent it, which mitigates the offence to matt-slaughter.
Conceding these principles of law, the Court is of opinion that neither applies to this case, and that the offence is murder. There is some confusion in respect to the application of these principles of the law of homicide, grow-' ing out of obiter dicta and certain decisions to be met witk in the books. It is important that all confusion should he cleared away, especially in times like Jhcse ; for one of the ill effects of war-is to scatter deadly weapons among the people, familiarize the public mind to scenes of blood, and make a resort to such weapons a thing of frequent* occurrence, unless it is prevented by the fear of the law. On this account, without attempting to review the cases, (which would be ah endless task) I will endeavor to give the reasons on which the-law is based; whereby the proper applications of’its principles will be made clear.
Manslaughter is of two kinds : 1st. When the killing is the heat of blood. 2d. When the killing ■ is by accident, or mistake, arising from negligence, or a want of due precaution. V
1. If A is about to strike B, who is unwilling to enter into a fight, and shows it by words or actions, or otherwise, as by going back,, or warns A not to strike, and A presses ón and strikes, or attempts- to «strike, and thereupon B kills with a deadly weapon, it is manslaughter ; for there is a legal provocation, and the law aseribes the killing to “ heat ef blood,” and not to malice.
2. If, on a sudden quarrel, tbe parties begin a fight by consent, without deadly weapons, and, after blows pass, one uses a deadly weapon and kills, it is manslaughter;" *66 for, by the excitement of the, fight, the blood is heated, and the killing is done, not of malice,, but iu the “furor brevis,” which the law, out of indulgence to human frailty, allows to mitigate the offence,.although the party had himself committed a broach -of the peace by entering into the fight willingly.
3. If, on a sudden quarrel, the parties fight by consent, at the instant, with deadly weapons, and one is kiLed, ■it is but manslaughter, 'provided the parties fight on equal terms, and no undue advantage is taken; for the fairness of the. fight rebuts the implication of malice, and the law mitigates the'offence out of indulgence to the frailty of human nature.
Which of these tin m principles is applicable to orn-ease? When it is pro red .that one has killed intentionally, with a deadly weapon, the.burthen of showing justification, excuse or mitigation, is on him. It is admitted the prisoner killed intentionally, with a deadly weapon. He does not show, hy his words or actions, that he declined the fight, or gave hack, or warned the deceased not to strike. So the first principle docs not apply. The parties did not begin the fight without deadly weapons. So the second principle does not apply, ühe parties fought, by consent, with deadly weapons ; .ho the case falls under the third principle, and the question is narrowed to this: Does the principle in regard to a iair fight apply? or does the case fall'under the exception iu regard to a fight on unequal terms, and when find no advantage "ia taken ? This is too rdahi for discussion. The prisoner, having his weapon ready, took his adversary at a dread* vantage, and stabbed him iu the side while he was in the act of turning round to face hiy, and before he was “ on his defence.” This dastardly act excludes the idea that *67 be entered into the fight in compliance with the common notions of honor, and shows that he i: sought the blood ” of the deceased. . ' .
The principle by which a killing in a fair fight, with deadly weapons, is mitigated, was adopted at a time when every .gentleman wore a sword ; and the custom was, oa. offence given, to draw and fight. Such fights, owing to the expertnoss of the combatant» in defence, wean not often fatal. Manners have since changed. No one in private life now wears a sword < and how far this may affect the principle is a serious question ; but it is cer/ain that a fair fight at the instant with deadly weapons, is now of rare occurrence. When one has a knife, and the other a stick or a pistol, they ara uuton equal terms ; and the purpose of each is-to take advantage and give a mortal blow, as soon as possible. Swob cases fall under .the exception ; the party killing is a murderer, and ' tijera is nothing to mitigate. • • % *
if, as contended hy Mr. Eaton, in a “ mutual combat” with deadly weapons, the offer to strike! amounts to a legal provocation, neither party would (¡ver be guilty of more than manslaughter ; for each could say, “ my ad-versar j was about to Strike with a deadly weapon !” So it would make no difference whether the fight was ■ declined or entered into willingly, or was fair, or unfair-— and the law would* encourage a hasty resort to deadly, weapons, and an unfair, use of them, by saying “ Yqm need not show that you declined the fight, 'vud attempted to avoid it; you need not show that yon t»bk no on lue advantage — use your weapon as soon as you can, and take all advantages ! for if your adversary is about to Btrike, it is a legal provocation, although you are also about to-strike, and whichever kills will only he guilty of *68 •manslaughter.” This would only lead to horrid conse- . quences, añd completely upset and confound all the prin- ■ ciples which' have been -so carefully adopted to deter men from the use of deadly weajrons, and at the same time extend a reasonable indulgence to the frailty of human na-, dure. . . .
The learned eounsel did not insist with much carnest- . ness, that the case could be brought under -the second kind of manslaughter. Oné or two instances will show that the doctrino has no application. - If one handles a loaded' gun so'negligently that it goes off and kills, it will be ex- ' cusable homicide or manslaughter, according to the degree of negligence.
'2. An officer pushed abruptly and violently into a gentleman's chamber early in the morning, to-arresthim, not telling his business or.using words of arrest. The gentleman, not knowing thafc he was an officer, under the first impulse stabbed him with his sword. ■ It was ruled manslaughter at common law, for the prisoner, not knowing the officer’s business, might, from his behavior, reasonably-conclude that he was about to rob or murder him. Cook’s case, Cro. Car., 538.
3. Upon an outcry of thieves, in the night time, a per-, sen, who was concealed in a closet, but no thief, in the hurry and surprise the family was under, was stabbed in the dark. This was'holden tobe an, innocent mistake, and ruled ehance medly. Levet’s case cited in Cook'’s' case supra. Foster, at page 299, observe* ef this ease : “ Possibly,'it might have been better ruled manslaughter, due circumspection not having been used.” In all cases, •when the offence is mitigated because ..the party acted under a mistake, for which there was reasonable ground, if the danger had been real,.the act would have been justi *69 'fiable. In our ease tlie danger was real — the deceased was about to strike :with a deadly weapon ; and, if this doctrine applies, the killing was justifiable, and the prisoner ought to have been acquitted ! ! Reducfio ad absur-dnm.
The second objection to. the charge is not tenable. From the view we have felt bound to take of the case, the Judge is considered <as having, in effect, instructed the jury that, putting the testimony of the witnesses on the part of the State out of the ease, as an intentional killing with a deadly weapon was- admitted, the testimony of the prisoners's witnesses did not mitigate the offence to manslaughter; and the prisoner has ño reason to complain, because the instruction assumes that wluit his own witnesses swore to was true.
The third objection is not tenable. The position “that the principle oh which the doctrine of reasonable doubt is grounded, is as much applicable to tlie grade of the homicide, as it is to the fact of the homicide,” is not true. The error consists in not attending to the distinction, that the fact of the homicide must be proved by ihe Slate; but if found or admitted, the onus of showing justification, excuse Or mitigation, is upon the prisoner. At page 290 Foster says: “ whoever would shelter himself.under the plea of provocation, must prove his case to the satisfaction of the jury; ’’the presumption of law is against him,’ “ till the presumption is repelled by contrary evidence.” At page 255 the matter is explained gt large.
The principle on which the doctriné of reasonable doubt as to tlie fact of the homicide is grounded, is, that in favor of life, the fact which ihe State is- required to establish, must he proved beyond a reasonable doubt. It certainly would .not be in favor of life, to apply this doc *70 trine to matter of mitigation, which .the prisoner is required to establish. Hence, in regard to that, the rule is, the jury must be satisfied by'the • testimony that the matter-offered in mitigation ds true.
There is error. This must be certified, &e.